## RUSSELL v INDUST. COMM.

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17439.   Decided Nov. 13, 1939

H. Elder, Cleveland, for plaintiff-appellee.

T. J. Herbert, Attorney General, Columbus; Wm. Durkin, Cleveland, Asst. Attorney General, for defendant-appellant.

### OPINION

By MORGAN, J.

John F. Russell, the claimant, was employed by The Dingle-Clark Company, and on the 13th day of August, 1937, while at work for his employer at the plant of The Republic Steel Company of Cleveland, he sustained an injury due to the slipping of a wrench and its hitting a live wire, causing a short circuit which caused a flash of fire, sparks and glare, thereby inflicting burns to parts of the plaintiff's body and temporarily blinding him.

Claimant filed an application with the Industrial Commission of Ohio for compensation principally for diminished eyesight which claim was disallowed. On rehearing, the claim was again disallowed for the reason that "the testimony shows that the plaintiff's present condition is in no way related to his injury of August 13, 1937."

Plaintiff's petition was filed in the Court of Common Pleas of Cuyahoga County by way of an appeal from the action of the Industrial Commission of Ohio.

The claimant testified that after the flash of fire, he was helped to the ground from the platform on which he was working, and was completely blinded for five or six minutes. That he continued for some time to suffer pain in the eyes and that although he had been an electrician for twenty-six (26) years it has been impossible for him to go back to the same work. That he had never had any trouble with his eyes before, and that his vision was good. He went back to work for The Dingle-Clark Company a few weeks after the accident and his work was wholly on the ground, because his poor eyesight did not permit him to do the work he formerly was doing.

That the claimant is suffering from poor eye-sight is not disputed. The question in the case is whether or not it was caused by the injury.

Dr. Rudemann, an eye specialist with the Cleveland Clinic, testified that he first examined Russell on August 26, 1937. He complained of loss of vision, or photophobia. The doctor testified that, "anything that causes a retinal irritation will produce photophobia" and "that most cases of photophobia are pathological." His examination did not disclose any injury to the retina or the optic nerve, but the doctor also testified that, "the nerves might be injured by reason of some unnatural condition, and yet not show up on examination."

Dr. Donald G. Allen, an eye physician in Cleveland, first examined the claimant on December 11, 1937, and found "a very considerable degree of far-sightedness with astigmatism." Although Dr. Allen stated that the far-sightedness was natural and existed before the accident, he explained the diminished vision following the accident in the fact that the accident put the claimant's eyes "out of commission" for a time, so that while he was able to compensate for his far-sightedness up to the time of the accident, after the immediate effect of the accident was gone, Russell might no longer be able to compensate for this far-sightedness.

Dr. Allen, in explanation, gave the following illustration:

"If a man is accustomed to carrying a two hundred pound load on his back and you suddenly put him to bed for a month, and he gets up, he probably would not be able to do that for a long time, if ever."

The evidence as to considerable loss of vision by Russell, following the accident, is uncontradicted and Judge Baer of the Court of Common Pleas, who heard the case, decided that there was a causal relation between the accident and the loss of vision. If there was no such causal connection, then the claimant's loss of vision must be explained wholly by the passage of time and the on-coming of old age. In our opinion, this can not account wholly for his diminished vision after the accident.

The judgment is affirmed. Exceptions may be noted.

TERRELL, PJ. & LIEGHLEY, J., concur.